*Higgins & Silverstein, John R. Higgins,* for plaintiffs.
*Earl A. Sweeney, Frank J. McGee,* for defendant.

RHODE ISLAND HOSPITAL TRUST COMPANY *et al., Tr. vs.* WILLIAM B. McELROY BLAIR *et al.*

JULY 3, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity for the construction of the will of Mary A. McElroy, deceased. The cause was heard in the superior court on bill, answers and oral proof and when it was ready for hearing for final decree, it was certified to this court for our determination, in accordance

with general laws 1938, chapter 545, §7. All persons in interest have been made respondents and have been duly served. All respondents have appeared by counsel, except Robert Bernard Banigan McElroy, of Los Angeles, California, as to whom a decree *pro confesso* was duly entered below.

Complainants raised in their bill four questions concerning the meaning of this will; but by reason of a settlement among the parties which appears of record, there remains only one question for us to answer, namely, "Is Leo H. Leary, Jr. entitled to any part of the one-half portion of said residuary estate mentioned in clause 'Fifty-Second', or is the share of said residuary estate to which he is entitled limited to the one-half portion mentioned in clause 'Fifty-Third'?"

The testatrix, after making numerous specific bequests, devised and bequeathed all the residue of her property in trust for certain purposes set out in clauses fifty-second and fifty-third of her will. She directed her trustees to divide her residuary estate into two parts, as nearly equal as possible, and then to pay a definite specified annual sum to certain described persons out of the net income of such trust funds for a definitely determined period and thereafter to pay over each trust fund in a certain specified manner.

By clause fifty-second the net income of that part of the trust fund was to be used to pay an annuity of $2400 each to her son Robert Bernard Banigan McElroy and her son John Holt McElroy, and of $3600 to her daughter Margaret Mary McElroy Blair "for the use and maintenance of her children, free from any control or use upon part of her husband . . . ." These payments were to continue, unless sooner terminated by the death of the legatee, for a certain period described in item 7 of that clause as follows:

> "The trust hereby created of said one part of my residuary estate (meaning said one-half part of my residuary estate) above mentioned in the first paragraph of said clause 'Fifty-Second' shall continue until my

grandson, Leo H. Leary, Jr., shall arrive at the age of twenty-five (25) years, should he live so long, or until his decease, should he not survive to that age, or in case he does not survive me then said Trust shall continue for the period of twenty (20) years from and after my decease. When my said grandson shall arrive at said age of twenty-five (25) years, or upon his decease prior to arriving at that age, or if he predeceases me, then at the end of twenty (20) years from and after my decease *it is my will and I direct my Trustees to distribute, transfer and convey said one part of said residuary estate, above mentioned in the first paragraph of said Clause 'Fifty-Second', absolutely and free and discharged of all Trusts, among and to the persons or person, who, according to the statutes of the State of Rhode Island in force at the time of my decease for the distribution of the effects of intestates, would have become entitled to my personal estate at my death if I had died intestate.*"

By clause fifty-third the net income of the second part of the trust fund was to be used to pay an annuity of $3600 to Leo H. Leary, Jr., the son of Alice Helen McElroy Leary, deceased daughter of the testatrix. This annuity was to be paid until Leo reached the age of twenty-five years, whereupon that trust fund was to be paid over to him. This clause finally provided that if he should die before attaining the age of twenty-five years, without leaving lawful issue, the trustees should transfer and set over this fund "free and discharged of all trusts to the persons or person who, under the statutes of the State of Rhode Island, in force at the time of my decease for the distribution of the effects of intestates, would have become entitled to my personal estate at the time of my death if I had died intestate."

Leo H. Leary, Jr. having reached the age of twenty-five years, the time has now arrived for the trustees to distribute these two funds. There is no controversy as to the proper distribution of the second fund. Leo H. Leary, Jr. is unquestionably entitled thereto. A question has arisen between respondent Leary and the other respondents over the proper

distribution of the first fund under the fifty-second clause. Leo H. Leary, Jr., being one of the persons who, according to the statutes of the state of Rhode Island in force at the time of testatrix's decease, would have been entitled to share in the distribution of her estate, if she had died intestate, now claims the right to participate in the distribution of the first trust fund, in accordance with the above italicized language of the fifty-second clause.

John Holt McElroy and the children of Margaret Mary McElroy Blair, she being deceased, contend that Leo. H. Leary, Jr. is not entitled to share in the distribution of this trust fund, because it was the intention of the testatrix to exclude him therefrom when she authorized and directed her trustees to divide her residuary estate into two nearly equal parts out of the first of which she provided for them and out of the second of which she provided for Leo H. Leary, Jr. They further contend that the scheme of her will clearly shows that such was her intent and that, when such scheme is considered in connection with her use of the italicized part of the language of the fifty-second clause, there appears an ambiguity in her will which should be clarified by admitting evidence *dehors* the will tending to prove the real intention of the testatrix. Pursuant to this latter contention, and over the objection of respondent Leary, John Holt McElroy was allowed, in the superior court, to testify by deposition relative to his mother's intention at the time she made her will. That testimony is here for our consideration.

In reply to the above contentions, respondent Leary argues that the will is clear and unambiguous, especially the italicized part of the fifty-second clause, with which we are primarily concerned and that evidence *dehors* the will to aid in its construction is unnecessary and therefore inadmissible. Hence, he argues further that the testimony of John Holt McElroy should be disregarded by us and that we should construe the will as it is written. Moreover, he contends that the fifty-second clause constitutes a separate and independent disposition complete in itself and that, if the

language thereof is clear and unambiguous, as he claims it is, we should not resort to other parts of the will and seek for language which would import an ambiguity into that clause.

We are clearly of the opinion that this clause is not ambiguous. We shall not, therefore, consider any evidence *dehors* the will in order to determine the intention of the testatrix. In this case, whether we confine our consideration to the fifty-second clause or read the whole will, we find nothing in the language which the testatrix has employed that creates any ambiguity as to her intention in disposing of the *corpus* of her residuary estate upon the termination of the two trusts.

It is clear from the fifty-second clause that the testatrix intended the *corpus* of the trust set up thereunder to be distributed according to the law of intestacy. It is also clear from the fifty-third clause that she intended the *corpus* of that trust to be distributed in like manner in the event of the death of Leo H. Leary, Jr., without leaving lawful issue, before he attained the age of twenty-five years. In each instance she used the identical technical words necessary to give effect to such intention. Such plain and certain language must be given effect by us, unless it conflicts with other plain and certain language elsewhere in the will. *Industrial Trust Co.* v. *Wilson*, 61 R. I. 169.

But, argue the respondents McElroy and Blair, this language does conflict with the testatrix's plan or scheme in directing her trustees to divide her residuary estate into two nearly equal trusts. We do not think so. Assuming, without deciding, that a contention of this kind is otherwise valid, we find from a reading of the will that the plan of the testatrix was to provide two nearly equal trusts for the purpose of charging upon the income of each trust fund certain annuities. Beyond providing for such equality in the division of her residuary estate into two trust funds, the testatrix did not, by her disposition of the income of each trust, adhere to a fixed formula of equality. Upon the income of the first trust fund she charged a total of $8400 in annuities

and only $3600 upon the income of the second. To each of her sons she gave annuities of only $2400, while to her living daughter and the son of her deceased daughter, she gave annuities of $3600. Furthermore, although the annuity to her sons and grandson Leo was for the benefit of each of them, that to her daughter was for the use and maintenance of her daughter's children. It cannot be said, therefore, that the principle of equality of treatment of her beneficiaries is evident in her dispositions out of the income of each of these trust funds. Hence, it is neither contrary to nor inconsistent with the scheme of her will to find that she has made provision for the distribution of these funds according to the law of intestacy, even though such a distribution may result in further inequality of treatment of her ultimate beneficiaries.

Nor would respondents McElroy and Blair's construction of the will result in removing such inequality in the distribution of this fund. Under their construction there would still be inequality in the will as the first trust would be distributed among the two sons of the testatrix and the children of her daughter Margaret Mary McElroy Blair, while the other half of the residuary estate of the testatrix in the second trust would be distributed in full solely to Leo H. Leary, Jr. Hence, to allow him to participate in the distribution of the first trust fund, in accordance with the language of the testatrix, would not upset a general dispositive scheme of equality for the distribution of her residuary estate but would merely *extend* somewhat further an already existing inequality, which the testatrix appears to have deliberately adopted in her will.

There is nothing in clause fifty-second or elsewhere in the will to indicate that she desired to limit her grandson to the provision which she had made for him in the fifty-third clause. Indeed, if she had intended to exclude him from sharing in the distribution of the first trust fund under the fifty-second clause, it would have been very easy for her to do so. Apparently what she did intend to accomplish by

dividing her residuary estate into two approximately equal trust funds for the payment of the annuities was to make certain that her grandson Leo H. Leary, Jr. would have the sole enjoyment of one half of her estate, if he lived to the age of twenty-five years, and that in no event would there be any possibility of such share being used to pay any of the annuities, other than the one for the benefit of Leo. A careful reading of.the testatrix's will shows that he was the chief object of her bounty. Indeed, the very manner in which both trust funds were limited in duration to the arrival of Leo at the age of twenty-five years shows that the testatrix was thinking primarily of him and wanted her residuary estate discharged at such time of the first as well as the second trust, because she intended him to share personally in the distribution of the first trust.

If the theory of the other respondents were correct, that respondent Leary should be excluded from the first trust because it was the intention of the testatrix in setting up the two trust funds to keep them independent and exclusive as to the beneficiaries thereof so that only the beneficiaries mentioned in each clause would participate in the distribution of the fund set up under such clause, then, if respondent Leary had died before reaching the age of twenty-five, without leaving lawful issue, these other respondents would have been barred, under that theory, from participating as beneficiaries in the distribution of the second fund, because the language employed to dispose of that fund in such event is the identical technical language used in the fifty-third clause. The mere mention of such a result must convince those respondents of the fundamentally untenable nature of their contention. It would import into this clearly-expressed will probable consequences of doubt and confusion of a very unsettling nature. It must, therefore, be rejected.

And so assuming, without deciding, that it was necessary in order to determine the intention of the testatrix to look at the whole will, notwithstanding the clear and unambiguous expression of her dispositive intent, as to the distribution

of the first fund, in the fifty-second clause itself, which is not dependent upon or affected by any other clause, we find from a reading of the whole will that the testatrix did not intend to exclude Leo H. Leary, Jr. from the class entitled to share in the distribution of that fund. He is, therefore, entitled to such share of that fund as he would have been entitled to, under the law of this state, if the testatrix had died intestate.

We have been advised that one of the respondents, John Holt McElroy, has died since this matter was argued before us; but this event does not in any manner necessitate any further consideration of the cause, as the essential rights of the parties were all presented in argument, and are not adversely affected by his death at this time. *Hopkins, Tr.* v. *Curtis,* 43 R. I. 19.

The parties may, on July 10, 1944, present to this court, for entry in the superior court, a decree in accordance with this opinion.

*Francis I. McCanna, George F. McCanna,* for complainants.

*Swan, Keeney & Smith, Ernest A. Jenckes,* for respondents William B. McElroy *et al.*

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent John H. McElroy.

*Edwards & Angell, William C. Waring, Jr., Ernst T. Voigt,* for Leo H. Leary, Jr.